```
                 UNITED STATES  DISTRICT COURT
                 EASTERN DISTRICT OF LOUISIANA

HASPEL & DAVIS  MILLING &                        CIVIL ACTION
PLANTING  CO. LTD.,  ET AL

VERSUS                                           NO.  06-3829

BOARD OF LEVEE COMMISSIONERS                     SECTION: E/5
OF THE ORLEANS LEVEE DISTRICT
```

### ORDER AND REASONS

The following motions came before the Court for oral argument on Wednesday, January 3, 2007, at 10:30 a.m.: the Board of Levee Commissioners of the Orleans Levee District's ("levee board") Motion to Vacate Writ and Order, and Alternatively to Stay Execution Writ and Order and Judgment Without Posting Bond Pending Appeal (r.d. #79). The State of Louisiana's Motion to Intervene, and alternatively, Motion for Stay the Writ and Order Garnishment (r.d. #59) was submitted and considered on the briefs. After considering the evidence, the pleadings, the memoranda, counsels' arguments and the law, the Court **DENIED** all motions. The Court now assigns written reasons.

### *BACKGROUND*

On Oct. 10, 2006, the district court entered judgment against the levee board on plaintiffs' 42 U.S.C. 1983 Takings Clause claim in the amount of $17,442,322.96 plus interest (and costs), upon finding that the levee board had violated the U.S. Constitution and

plaintiffs' civil rights by taking plaintiffs' private property. *See* record documents #33 (Reasons for Judgment) and #34 (Judgment), entered on October 10, 2006, for a detailed factual recitation. This Court, and the Fifth Circuit, subsequently denied the levee board's motions for a right to appeal without posting a bond, that is, a stay of the judgment pending the appeal.  This Court has also issued several writs of garnishment against levee board property – the mineral royalties it still collects from Bohemia property still owned by the levee board – in execution of the judgment.

## *ANALYSIS*

### I.

The only substantive issue before the Court in both motions is whether Art. XII § 10(C) of the La. Const. of 1974 and La. R.S. § 13:5109(B)(2) prohibit the plaintiffs from seizing any levee board assets, described as "public property" or "public funds," to satisfy their "money judgment" against the levee board.  Both the levee board and the State make the same argument: that this is merely a money judgment for damages against the levee board, and this Court is bound by the referenced provisions of the Louisiana Constitution and the Revised Statutes, therefore the grant of the Writ of Fieri Facias was improper and in violation of Fed. R. Civ. P. 69(a).  Rule 69(a) provides in part as follows:

> Process to enforce a judgment for the payment

>of money shall be a writ of execution, unless the court directs otherwise.  The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of executions shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

The levee board makes two additional arguments:  that there are "clear and obvious" public policy considerations, including that enforcement of judgments against state and local governments could impede government activities and be detrimental to the health, safety and welfare of citizens, for example, seizing levee board revenues will jeopardize its operations and compromise the flood protection it provides to the citizens of southeast Louisiana; and, that property held by local or state governments is held for the benefit of all creditors, and the royalty income of the levee board that plaintiffs are garnishing has been pledged to secure loans in excess of $35.5 million from FEMA and state government.

1.

Art. XII § 10(C) provides in relevant part as follows:

>No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.

La. R.S. § 13:5109(B)(2) provides as follows:

> Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.

Section 13:5109(B)(2) was enacted by the legislature to "satisfy the mandate" of Article 12, § 10 of the La. Const. of 1974.  La. Atty. Gen. Op. 81-223, 1981 WL 155283 (La.A.G.).  In that Opinion, the Attorney General opined that, pending further rulings of the Louisiana Supreme Court:

> judgment creditors seeking satisfaction of money judgment are limited by the provisions of R.S. 13:5109, and *unless due process* or equal protection rights are violated, judgment creditors are without any practical recourse for enforcement of money judgments rendered against the state or a political subdivision.

(Emphasis supplied.)  In this case, the plaintiffs' Fifth Amendment due process rights have been violated by the levee board's refusal to return plaintiffs' property.

Under Louisiana law, when the law is clear and unambiguous, and does not lead to absurd consequences, it shall be applied as written and no interpretation may be made in search of the legislature's intent.  La. C.C. art 9; Haspel & Davis Milling &

-4-

Planting Co., Ltd., v. Board of Commissioners of the Orleans Levee District, 680 So.2d 159, 166 (La. App. 4th Cir. 1996), *writ denied*, 684 So.2d 932 (La. 1996)(citations omitted).  "Words and phrases shall be read within their context and shall be construed according to common and approved usage."  La.R.S. 1:3;  Id. at 165.  "Constitutional provisions are to be construed and interpreted by the same rules as are other laws."  Firefighters' Retirement System v. Landrieu, 572 So.2d 1175, 1178 (La.App. 1 Cir. Dec. 18, 1990), *writ denied*, 575 So.2d 811 (La. Mar. 8, 1991)(citations omitted).

The essential question is whether this Court's judgment of October 10, 2006, is a "judgment" as contemplated by Section 13:5109(B)(2) and Article 12, § 10 of the La. Constitution of 1974.  The judgment at issue is for a quantum of money, but it is not a money judgment in favor of the plaintiffs and against the levee board for damages for breach of contract or a tortious act causing injury to the plaintiffs, as were the judgments in each of cases cited by the levee board in support of its argument.  The judgment quantifies the amount of the plaintiffs' money in the possession of the levee board, as a result of its collection of royalty income from plaintiffs' private property between 1984 and 1992, in violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution.  The funds at issue are not "public funds" collected

-5-

or derived from public sources.  Even though it was well aware that the ownership of those royalties was in dispute, it does not appear that the levee board segregated the funds from its income from public sources, such as the millage collected from property taxes.  It also would appear that the royalties collected were spent by the levee board for public purposes.

In Firefighters' Retirement System, the plaintiffs ("Systems") sued the state treasurer, seeking a declaration that the Systems were entitled to possession of funds collected for their benefit pursuant to state law, that were being held by the state treasurer. 572 So.2d 1175.  Some of the funds were derived from employee and employer contributions, and others from insurance company assessments, both pursuant to statutory authorization and directive.  Id. at 1176.  The defendant argued that the funds were "state funds" that could be distributed only pursuant to state law. The trial court found that as a matter of law the funds were owned by the Systems, and ordered the defendant to remit the disputed funds to the Systems.  The defendant appealed, arguing in part that the trial court erred by ordering her to release the funds without an appropriation of the legislature, as provided for in La. Const. of 1974 art. III, § 16(A) and art VII, § 10(A) or art. XII, § 10(C).  Id. at 1180.  Art. III § 16(A) prohibits money from being withdrawn from the state treasury except through specific

appropriation, and art. VII § 10(A) deals with the expenditure of *state funds*, again requiring an appropriation "made according to law." Id.

The appellate court affirmed the trial court, concluding that the "above provisions pertain to withdrawal of *state funds* from the state treasury and require a legislative appropriation for such action." Id. The court agreed that the funds at issue were *not* state funds, but the Systems' funds, and no appropriation was necessary to remove them from the state treasury. Regarding defendant's argument that art. XII, §10(C)of the La. Const. of 1974 applied, the appellate court held as follows:

> This provision deals with the appropriation by the legislature or a political subdivision of funds owned by the state or the political subdivision to pay judgment against the state or political subdivision. *See Felix v. State Paul Fire and Marine Insurance Company*, 477 so.2d 676 (La. 1985). In the instant case, the trial court ordered Landrieu to remit the *Systems' funds* (not state funds) to the Systems. Since the judgment in this case does not pertain to state funds, La. Const. Of 1974 art. 12, § 10(C) is not applicable, and a legislative appropriation unnecessary.

Id. at 1181 (emphasis in original). See also Louisiana State Employees' Retirement System v. State of Louisiana, 423 So.2d 73 (La. Cir. 1, 1982), *writ denied*, (La. Jan. 28, 1983)(state constitutional prohibition against the purchase of common stock with public funds by was not applicable to the funds at issue

because they were not state or public funds within the meaning of art. 7, § 14(A)of the La. Const. of 1974).

The levee board next argues that in this case, the Fifth Circuit "confirmed that this Court's judgment is 'payable only by specific appropriation' and that satisfaction of the judgment is within the Levee Board's discretion[,]" citing Docket No. 06-31083, Order (5th Cir. Nov. 10 2006).  That Fifth Circuit Order denied the levee board's motion to stay this Court's judgment against it pending appeal without a bond.  The Fifth Circuit found that Rule 62(f) (allowing a state agency to appeal without the necessity of posting a bond (1) if it would be entitled to such a stay of execution under Louisiana law, and (2) if the judgment against it is a lien on its property under Louisiana law) is not applicable:

> because in Louisiana a judgment against the state does not constitute a lien on the judgment debtor's property for purposes of Rule 62(f). .... Where satisfaction of the judgment is a matter of legislative discretion, the judgment does not constitute a lien on the judgment debtor's property, and Rule 62(f) is inapplicable.

That Order confirmed only that this Court's judgment was not a lien on the levee board's property.  It did not hold that this particular judgment was payable only by specific appropriation. Moreover, Hoag v. State,889 So.2d 1019 (La. 2004), cited by the

Fifth Circuit as authority for its conclusion, held only that a writ of mandamus was inappropriate as an attempt to "order" the appropriation of funds to pay a judgment against the state because that act was discretionary, reserved to the legislature, and not ministerial.  Hoag was a case involving a judgment for past and future compensation provided by statute.

This Court previously reached the same conclusion as the Fifth Circuit, at r. d. #44, albeit for a different reason:

> [T]he judicial proceedings brought against the levee board in this case did not arise from activities within the scope and course of their duties and employment, as required by La.R.S. 13:4581.  This lawsuit arose from the levee board's unconstitutional taking of plaintiffs' private property and the Judgment at issue orders the levee board to return that property to plaintiffs.  Under Louisiana law, the levee board is not entitled to a stay pending appeal without posting a bond, therefore is not entitled to relief pursuant to Fed. R. Civ. P. Rule 62(f).

2.

The levee board next argues that maintaining the writs of garnishment will impede its ability, given its post-Katrina reduced income stream, to do its job of protecting and serving the citizens of southeast Louisiana.  However, the levee board will not be in the business of protecting the citizens of southeast Louisiana after January 1, 2007, although it argues that it will still own and manage its many non-flood protection related (income producing)

assets.

It further argues that its property "is deemed held for the benefit of all creditors, not just one particular judgment creditor." Memorandum, p. 3. It asserts that the oil and gas revenues plaintiffs are attempting to seize have been pledged to secure disaster loans in excess of $35.5 million from the state and FEMA. It attached as Ex. A a series of copies of board resolutions authorizing the pledge of those royalties to secure the loans. All but one resolution is dated after this lawsuit was filed in federal court. Moreover, given the nearly two decades of litigation regarding the ownership of the royalties previously collected by the levee board, and the state Consent Judgment against the levee board and in favor of these plaintiffs, recorded in the public records in Plaquemines and Orleans parishes, there was ample public notice to all parties involved that the royalty income of the levee board was encumbered by the Consent Judgment, at the very least, at the time that property was pledged by the levee board to secure the disaster loans.

In <u>Vogt v. Bd. of Commissioners of the Orleans Levee District</u>, 294 F.3d 684 (5th Cir. 2002), the Fifth Circuit held as follows:

> The only point requiring resolution at this stage is the levee board's insistence that the landowners' suit is not a takings claim but merely an attempt to execute the judgment of the state courts. We find no support for the

-10-

> levee board's premise that a decree of the Louisiana courts somehow converted private property (the mineral royalties) into public funds subject to an unenforceable lien. *Cf. Webb's Fabulous Pharmacies*, 449 U.S. at 163-64, 101 S.Ct. at 452 ("[A] State, by *ipse dixit,* may not transform private property into public property without compensation.")  In the levee board's view, the state courts' holding that the landowners' judgment is unenforceable against the levee board effectively recharacterizes their property right in mineral royalties into an intangible claim against the levee  board's property. *Vogt*, 814 So.2d 648.  What was the landowners' property has suddenly vanished behind a veil of sovereign immunity in state court.  We hold, however, that this result is untenable against a federal takings claim.

Id. at 697.

On October 10, 2006, this Court entered judgment ordering the levee board to return to the plaintiffs $17,442,322.96, plus interest, property belonging to plaintiffs that was unconstitutionally taken by the levee board between 1984 to 1992, and which the levee board has steadfastly refused to return in spite of legislative mandates and state and federal court judgments ordering it to do so.  "The Federal Court unquestionably has the power to enter the various orders that state official and private parties have chosen to ignore, and even to displace local enforcement of those orders if necessary to remedy the violations of federal law found by the court." Washington v. Washington State Commercial Passenger Fishing Vessel Assoc., 99 S.Ct. 3055, 3079

(1979). Moreover, the Fifth Circuit has observed, like the Washington case, *supra,* in the context of enjoining actions (or inactions) of state officials, that "when there is a deprivation of a constitutionally guaranteed right, the duty to exercise the power cannot be avoided." Woods v. Wright, 334 F.2d 369, 374-75 (5th Cir. 1964), *citing* Dixon v. Alabama State Bd. Of Education, 294 F.2d 150 (5th Cir. 1961, *cert denied*, 368 U.S. 930 (1961). To vacate the writs of garnishment would have the effect of insulating the levee board from ever having to return plaintiffs' property, thereby avoiding the consequences of its unconstitutional actions.

II.

The State seeks to intervene "for the limited and exclusive purpose of enforcing Article XII, § 10(C) of the Louisiana Constitution of 1974 and LA. REV. STAT. § 13:5109(B)(2) which prohibit seizure or garnishment of public property or public funds." Motion for Leave to Intervene, ¶11. The State's motion identifies Fed. R. Civ. P. 24(b) as the authority for its motion to intervene, but quotes the language of Rule 24(a), providing for intervention of right. Rule 24(b) provides that an applicant "*may be permitted*" to intervene (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicants claim or defense and the main action have a question of law or fact in common. (Emphasis supplied.) Rule 24(a) provides

-12-

that an applicant *shall* be permitted to intervene:

> (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(Emphasis supplied.)  The State cites to 28 U.S.C. § 2403(b), which confers upon the State an unconditional right to intervene in any action in a Court of the United States to which it or any of its agencies is not a party wherein the constitutionality of any of its statutes affecting the public interest is drawn in question.

First, this suit, and enforcement of this Court's judgment against the levee board, does not challenge or question the constitutionality of art. XII § 10(C), of the La. Const. of 1974, or La. R.S. § 13:5109(B)(2), but merely finds those provisions inapplicable to this situation.  And, according to the levee board's memorandum, at p. 5, "recently enacted legislation providing for the consolidation of south Louisiana levee districts effective January 1, 2007, *will not result in the transfer of ownership of the Orleans Levee District's property or otherwise alter the plaintiffs' rights.*"  (Emphasis supplied.)

Moreover, the issue before the Fifth Circuit in Vogt, 294 F.3d

-13-

at 692, was whether the Orleans Levee District is an "arm of the state" for purposes of the Eleventh Amendment. The issue arose in the context of the plaintiffs' claim in federal court (a claim essentially identical to the Haspel & Davis plaintiffs' claim and the facts in this case), that the levee board's refusal to pay a judgment arising from the board's "wrongful retention of mineral royalties," after land acquired by the district was returned to the private owners pursuant to the state statute, constituted and unconstitutional taking. That Court carefully distinguished between judicial terms "creature or agency of the state" and "arm of the state" for Eleventh Amendment purposes. *See discussion,* id., at p. 690-91. The Fifth Circuit held, after consideration of the six factors enumerated in Cozzo v. Thangipahoa Parish Council-President Govt., 279 F.3d 273, 281 (5th Cir. 2002), that the Orleans Levee District was not an arm of the state for purposes of Eleventh Amendment immunity. Vogt, at p. 696.

The most important of the six factors, discussed extensively in Vogt, at pp. 693-94, was the source of the levee district's funding. The Fifth Circuit concluded:

> The Orleans Levee District is almost entirely self-supporting, and the funds provided by the State are earmarked for special projects. The levee district has the authority to tax and issue bonds, although the state specifically disclaims responsibility for any debts of the levee district. Of greatest significance is

>       that nothing in Louisiana law, or in recent
>       practice, suggests that the State has any
>       obligation with respect to judgments against
>       the levee district.

Id., at 694.[1]

The Court concludes that the State of Louisiana does not have an unconditional right to intervene in this matter, and that any interest it may have is adequately represented by the existing parties.

Accordingly,

**IT IS ORDERED** the Board of Levee Commissioners of the Orleans Levee District's Motion to Vacate Writ and Order, and Alternatively to Stay Execution Writ and Order and Judgment Without Posting Bond Pending Appeal (r.d. #79) is **DENIED;** and;

**IT IS FURTHER ORDERED** that the State of Louisiana's Motion to Intervene, and alternatively, Motion for Stay the Writ and Order Garnishment (r.d. #59) is **DENIED.**

New Orleans, Louisiana, January 3, 2007.

_____
**MARCEL LIVAUDAIS, JR.**
Senior United States District Judge

---

[1] That Court also noted that at that time, the levee board did not dispute that it received income from investment accounts then worth $57 million. Id., at 694.