```
                 UNITED STATES  DISTRICT COURT
                 EASTERN DISTRICT OF LOUISIANA

HASPEL & DAVIS  MILLING &                        CIVIL ACTION
PLANTING  CO. LTD.,  ET AL

VERSUS                                           NO.  06-3829

BOARD OF LEVEE COMMISSIONERS                     SECTION: E/5
OF THE ORLEANS LEVEE DISTRICT
```

### **SUPPLEMENTAL REASONS FOR AMENDED JUDGMENT AND ORDER**

The following motions are before the Court: (1) plaintiffs' Motion to Calculate Interest Due to Plaintiffs (r.d. #117); (2) defendant's, the Board of Levee Commissioners of the Orleans Levee District ("District"), Motion to Vacate Writs of Seizure and Related Orders in Aid of Execution of Judgment (r.d. #135); and, (3) plaintiff's Motion for Injunction or Alternatively Sequestration (r.d. #126). After considering the evidence, the pleadings, the memoranda and the law, the Court prepared to rule on all motions.

### *BACKGROUND*

On October 10, 2006, the district court entered judgment against the District on plaintiffs' 42 U.S.C. 1983 Takings Clause claim in the amount of $17,442,322.96 plus interest (and costs), upon finding that the District had violated the U.S. Constitution and plaintiffs' civil rights by taking plaintiffs' private property. *See* record documents #33 (Reasons for Judgment) and #34 (Judgment), for a detailed factual recitation. The District filed

a [Conditional] Notice of Appeal to the United States Fifth Circuit Court of Appeals on October 18, 2006. R.d. #36. This court, and the Fifth Circuit, subsequently denied the District's motions for a right to appeal without posting a bond, that is, a stay of the judgment pending the appeal. The district court then issued several writs of garnishment in execution of the judgment against various entities believed to be holding District property.

On February 1, 2007, the Fifth Circuit issued an order granting the District's motion to dismiss its appeal for lack of jurisdiction, finding that the judgment of the district court was not a final judgment because it fails to calculate the prejudgment interest to be applied to the damage award. These pending motions followed.

*ANALYSIS*

I.

Plaintiffs' Motion to Calculate Interest Due to Plaintiffs

The judgment entered on October 10, 2007, provided for pre-judgment interest as follows:

> calculated in accordance with the terms of the judgment of the 25th Judicial District Court for the Parish of Plaquemines, bearing Docket No. 31-357, dated December 11, 2000, up to the date of demand for this judicial proceeding; plus interest from July 20, 2006, the date of the judicial demand herein until date of final judgment as provided by law....

On February 7, 2007, plaintiffs filed a motion to calculate interest due to plaintiffs pursuant to the judgment. The motion

points out that, based on Act 130 of the 2005 Regular Session of the Louisiana legislature, the Legislative Auditor denies that it has the legal authority to calculate the interest rate as provided by the consent judgment of the 25th Judicial District Court for the Parish of Plaquemines in civil action No. 31-357.  In essence, the plaintiffs' motion asks the court to accept (or traverse) the interest calculations prepared by the accounting firm of Bourgeois Bennett, appointed by the state court as the court-approved disbursing agent.

On February 8, 2007, at record document #120, the district court ordered the District to produce:

> an accounting calculating the pre-judgment interest in accordance with the terms of the judgment of the 25th Judicial District Court for the Parish of Plaquemines, bearing Docket No. 31-357, dated December 11, 2000, up to the date of demand for this judicial proceeding; plus interest from July 20, 2006, the date of the judicial demand herein until date of the October 10, 2006 judgment, calculated at the rate of interest on July 20, 2006, pursuant to 28 U.S.C. § 1961, a rate of 5.24% per annum compounded annually[], for the principal amount of the judgment of Seventeen Million Four Hundred Forty-two Thousand Three Hundred Twenty-two Dollars and Ninety-six Cents($17,442,322.96).

The District responded that the interest calculation ordered by the district court could only be provided by the Legislative Auditor as provided by the 2000 Consent Judgment, and that it was the plaintiffs' duty, not the District's duty, to compel the Legislative Auditor to comply.  Although it registered its

objection to the court's order, the District complied by accepting the interest rates proposed by the plaintiffs and computing the pre-judgment interest from July 1, 2005 through July 20, 2006, the date the plaintiffs' made judicial demand on the District in federal district court.

The District also points out that the state court's "Settlement Judgment" (the Consent Judgment) "provided that the state district court would retain jurisdiction 'for purposes of the completion of any other matters necessary to enforce the terms and conditions of the settlement as approved herein' and 'for the purpose of effectuating, enforcing and implementing its Judgment herein' (¶¶5-6)."  District's Response, p. 2.  That Judgment also provided, at ¶4, that the "rights and privileges and obligations and duties of the Class Plaintiffs and Defendant shall be governed by that certain Settlement Agreement homologated herewith and annexed hereto and incorporated herein as if copied *in extenso*." The District has consistently argued that this federal lawsuit for its violation of plaintiffs' constitutional and civil rights is nothing more that an attempt to enforce the 2000 state court Consent Judgment.

Upon the District's default of its obligations pursuant to the Settlement Agreement that was the subject of the Consent Judgment, in an attempt to salvage the Consent Judgment, the parties entered into a superceding settlement agreement, a "Proposal of Settlement"

dated June 4, 2005, and filed into the record of civil action No. 31-357 on June 14, 2005.  The District missed the required payment under this agreement on August 15, 2005, before Hurricane Katrina struck the area, and made no further payments.  On May 31, 2006, in civil action No. 31-357, Judge Ragusa entered the following Judgment:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Board of Commissioners for the Orleans Levee District is hereby deemed to be in breach of the Settlement Agreement, the Settlement Agreement is deemed rejected by the Qualifying Class Claimants, and the Settlement Agreement is declared to be of no further force or effect allowing the Plaintiffs to seek other remedies of collection against the Levee Board.

It was this default, confirmed by the state court's final judgment of May 31, 2006, that constitutes the underlying unconstitutional taking that is the subject of the district court's judgment.  After review of the record, and of this court's Reasons for Judgment, r.d. #33, the court concludes that the award of interest to the plaintiffs, "calculated in accordance with the terms of the judgment of the 25th Judicial District Court for the Parish of Plaquemines, bearing Docket No. 31-357", in its judgment dated October 10, 2007, was in error.  The terms of the original settlement agreement that is the subject of the Consent Judgment are not material to the enforcement of the district court's judgment, and the interest calculation asserted in the state

Consent Judgment does not apply.[1]

Prejudgment interest is not mandated for successful claims brought for constitutional violations pursuant to 42 U.S.C. §1983. Frere v. Lee, 2000 WL 64297 *2 (E.D.La. 01/26/00) (Berrigan, J.) *citing* Hale v. Fish, 899 F.2d 390, 404 (5th Cir. 1990). "Absent statutory mandate, the award of prejudgment interest generally is discretionary with the trial court." Id., *quoting* Whitfield v. Lindemann, 853 F.2d 1298, 1306 (5th Cir. 1988). "Prejudgment interest is not granted 'according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness.'" Id., *quoting* Whitfield, 853 F.2d at 1306 (internal citations omitted). This Court may therefore exercise its reasoned discretion in its determination of the amount of prejudgment interest to award in this case. *See* id..

"Interest is compensation for the use of funds; it is not awarded as a penalty against a defendant." Raspanti v. United States Dept. Of the Army, 2001 WL 1081375 *11 (E.D.La. 9/10/01), *quoting* Peques v. Mississippi State Employment Serv., 899 F.2d 1449, 1453 (5th Cir. 1990). The interest to which plaintiffs herein are entitled is prejudgment interest from the date of demand, July 20, 2006, to the date of judgment, and post judgment interest until the judgment is paid. Since it is the Court's error that rendered

---

[1] Neither are plaintiffs entitled to the return of the "costs and fees" set forth in ¶2.18 of the Settlement Agreement.

the October 10, 2006, judgment invalid as a final judgment, it would be unfair to assess prejudgment interest against the District for the period from October 10, 2006, until an amended final judgment that includes a quantified amount of prejudgment interest is entered.

The calculation of the federal post judgment interest rate is set forth in 28 U.S.C. § 1961(a) and (b).  That statute also fixes the rate of prejudgment interest when there is a federal question that must be governed by federal law.  Wright v. Blythe-Nelson, 2004 WL 1923871 (N.D.Tex. 8.26/04), *citing* Travelers Inc. Co. V. Liljeberg Enterprises, Inc., 7 F.3d 1203, 1209 (5th Cir. 1993).  In Raspanti, Magistrate Judge Wilkinson awarded prejudgment interest on the attorney's fees awarded at the rate set by 28 U.S.C. § 1961(a) and (b).  Raspanti, * 12; *see also* Dibler v. Metwest, Inc., 1997 WL 222910 (N.D.Tex. 4/29/97) ("The proper rate for calculation of pre-judgment interest is the post-judgment interest rate proscribed in 28 U.S.C. § 1961 [] (setting post-judgment interest rate at prevailing Treasury bill rate)").

The District, in its Response to this court's order dated February 8, 2007, calculated the prejudgment interest due from July 20, 2006 to October 10, 2006, at the a rate of 5.24% per annum compounded annually[2], for the principal amount of the judgment of

---

[2] The federal interest rate as of July 20, 2006, pursuant to 28 U.S.C. § 1961(a) and (b).

Seventeen Million Four Hundred Forty-two Thousand Three Hundred Twenty-two Dollars and Ninety-six Cents ($17,442,322.96), to be $205,331.98.  Accordingly, this court will award prejudgment interest to plaintiffs in that amount, and dismiss plaintiffs' motion as moot.

II.

### District's Motion to Vacate Writs of Seizure and Related Orders in Aid of Execution of Judgment

The District filed a motion requesting that the Court vacate 19 various orders, writs, and interrogatories and citations issued in aid of plaintiffs' attempts to execute on the Court's judgment of October 10, 2006.[3]  The District argues, correctly, that because the Fifth Circuit issued the order on February 1, 2007, holding that "the judgment of the district court is not a final judgment because it fails to calculate the prejudgment interest to be applied to the damage award", all proceedings in aid of execution on that judgment were premature and improper.  Accordingly, the 19 various orders, writs, and interrogatories and citations issued in aid of execution on the judgment are vacated.

The District also reiterates its position that any seizure of any assets of the District and any execution of any judgment against it violates the provisions of Fed. R. Civ. P. 69(a), which incorporates Art. XII § 10(C) of the La. Const. of 1974 and La.

---

[3] Record documents 56, 67, 61, 62, 63, 65, 68, 70, 71, 77, 78, pt. 106, pt. 82, 97, pt. 105, pt. 96, 108, 111, pt. 103.

R.S. § 13:5109(B)(2), prohibiting the plaintiffs from seizing any District assets, described by the District as "public property" or "public funds," to satisfy their "money judgment" against it.  The district court reiterates its disagreement with the District's position.

The essential question is whether this Court's judgment is a money judgment as contemplated by Section 13:5109(B)(2) and Article XII, § 10 of the La. Constitution of 1974.  The judgment at issue is for a quantum of money, but not for the usual money damages.  It quantifies the amount of the plaintiffs' money in the possession of the District, as a result of its collection of royalty income from plaintiffs' private property between 1984 and 1992, in violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution.

### III.
Plaintiff's Motion for Injunction or Alternatively Sequestration

Plaintiffs seek and injunction prohibiting the District from disposing of, distributing, or encumbering assets or moving funds from existing financial institutions pending the execution of any final judgment entered in this case.  They assert that for over two decades of litigation regarding the return of their money, the District has steadfastly defied legislative mandates and state and federal court judgments ordering the return of the plaintiffs' money.  They claim that the District is now attempting to dispose of its assets to the detriment of plaintiffs' ability to collect

its money. The plaintiffs ask this court to use its "broad discretionary powers" to grant the injunction sought to prevent the District from consuming assets that belong to the plaintiffs. Alternatively, plaintiffs seek an order of sequestration of the District's assets pursuant to Fed.R.Civ.P. 64 and La.C.C.P. 3573.

The District argues that plaintiffs are seeking a complete "stand-still" of the district, prohibiting it from operating at all, and from performing its "statutory duty to provide flood protection." It points out that the relief sought by plaintiffs is essentially a seizure of its property to satisfy the court's "interlocutory judgment" of October 10, 2006.

The District also argues that the plaintiffs have no right under any circumstances to seize, enjoin or sequester any of its property because plaintiffs have no interest in, or claim of ownership of the District's assets. It claims that none of the funds that plaintiffs have already caused to be seized, the mineral royalties from various oil companies and cash on deposit at Whitney National Bank, "relate to the plaintiffs' lands or to any royalty proceeds from those lands." Opposition, pp. 3-4. It further argues that it has neither consumed nor attempted to dispose of assets to the plaintiffs' detriment, but has merely transferred funds from the Whitney accounts to the state administered Louisiana Asset Management Plan ("LAMP") pursuant to the consolidation of the

levee districts as of January 1, 2007.[4]  It also argues that none of the property pledged to secure loans between May and September of 2006, including mineral proceeds from "District-owned lands", is plaintiffs' property.

The court agrees that plaintiffs' motion for injunctive relief is premature absent a final judgment and the expiration of ten day delay period for execution pursuant to Fed.R.Civ.P. 62(a).  The court disagrees with the argument that, after all delays have run, plaintiffs still have no ownership interest in the District's assets, including mineral revenues from District-owned lands.  Yet again, by sleight of hand, the District attempts to make plaintiffs' private property, held by the District for nearly 20 years, disappear into a void, only to be replaced by the Districts' untouchable "public funds" or "public property."

In the Settlement Agreement that is the subject of the state Consent Judgment of December 11, 2000, at ¶4.1, the District continued to deny any liability for the claims of plaintiffs for wrongdoing or for damages, but acknowledged that it, the District, had "taken into account that the Courts have rejected some of its positions."  The District was well aware that plaintiffs' had, at the very least, a colorable claim against the District for the

---

[4]If the Court understands the District's argument/explanation at p. 6 of its Opposition Memorandum, the former "levee board" no longer exists nor has any "flood control" related functions, but the Orleans Levee District continues to exist and retains ownership of all assets previously owned by the District, and all litigation against the former levee board "shall be continued in the name of the district."

return of their mineral royalties collected and retained by the District.  Since that money was never returned to plaintiffs, it is still in the possession of the District regardless of whether it has been co-mingled with the District's funds, or at some point spent by the District.  Upon the entry of a final judgment and expiration of the requisite delays in this matter, the plaintiffs are entitled to execute on the judgment against District by seizing royalties generated from lands owned by the District or cash in the District's accounts because, until plaintiffs' money is returned in full, any income generated by District-owned lands, and cash held by the District, belongs to the plaintiffs, not to the District.  The source of those funds is immaterial to the issue of plaintiffs' ownership of money held by or collected by the District.

## VI.

One additional issue is before the Court - the identity of the plaintiffs.  Over the District's objection, the district court allowed the case to proceed with the "plaintiff" identified as a portion of the class of plaintiffs certified by the 25th Judicial District Court for the Parish of Plaquemines in civil action No. 31-357.  In its Order of February 8, 2007, the district court ordered the plaintiffs to identify by name each of the class members who has an outstanding claim for the return of property from the District, and the principal amount claimed by each plaintiff.

In response, as Exhibit "A", plaintiffs filed a list identifying all remaining claimants and the amount to which each is entitled. Four of the identified claimants had claims of slightly less than $10,000.00. The District objected, noting that plaintiffs have repeatedly claimed that all claimants with claims of less than $10,000.00 have been previously paid pursuant to the state Consent Judgment in 2000.[5] It argued that the judgment amount was therefore inflated by $39,470.96.

Plaintiffs explained that these four claimants originally had claims in excess of $10,000.00, but had received some money from the payments made by the District pursuant to the Consent Judgment, which reduced the remaining amount due to these claimants to slightly below $10,000.00. The district court accepts plaintiffs explanation, and finds that all claimants identified and listed on Ex. "A" to plaintiffs' Response, and only those plaintiffs, are entitled to judgment in the amounts listed.

Accordingly,

**IT IS ORDERED** that the plaintiffs' Motion to Calculate Interest Due to Plaintiffs is **DISMISSED AS MOOT;** and,

**IT IS FURTHER ORDERED** that the Orleans Levee District's Motion

---

[5]This group of claimants are listed in Exhibit "B" to plaintiffs' Response to the district court's Order. The District also objected to any potential claim by the Exhibit "B" group of plaintiffs for distribution of additional "costs and fees" for the administration of the state Consent Judgment. Because that "claim" is pursuant to the state Consent Judgment, no such award will be made by the district court. See note 1, *infra.*

to Vacate Writs of Seizure and Related Orders in Aid of Execution of Judgment is **GRANTED;** and;

**IT IS FURTHER ORDERED** that the plaintiff's Motion for Injunction or Alternatively Sequestration (r.d. #126) is **DENIED;** and,

**IT IS FURTHER ORDERED** that an Amended Judgment be entered pursuant to this Supplemental Reasons for Judgment and Order.

New Orleans, Louisiana, February 28, 2007.

                                   *[signature]*
                              **MARCEL LIVAUDAIS, JR.**
                       Senior United States District Judge