```
                  UNITED STATES  DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| HASPEL & DAVIS MILLING & PLANTING CO. LTD., ET AL | CIVIL ACTION |
| VERSUS | NO. 06-3829 |
| BOARD OF LEVEE COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT | SECTION: E/5 |

### RULING ON MOTION

Defendant's ("District") Motion to Stay Judgment and Prohibit Seizures, rec. doc. #162, is before the court on an expedited basis. The court has considered the parties' memoranda, the pleadings and the law, and DENIES the motion.

### ANALYSIS

#### Motion to Stay Judgment

The District's motion is directed at this court's Amended Judgment, entered on March 1, 2007, at rec. doc. #135, and the Plaintiffs' anticipated motions in execution of that judgment, which is in excess of $17,000,000.00. The District argues that it is entitled to a stay of the Amended Judgment without posting a supersedeas bond, pending appeal, pursuant to Fed. R. Civ. P. Rule 62(d), and Castillo v. Montelepre, Inc., 999 F.2d. 931, 941 (5th Cir. 1993), r'hrg denied, 10/5/93. The Plaintiffs argue that the District has not shown that it is entitled to a waiver of the requirement of posting a bond to secure a stay pending appeal, and that Castillo does not support the District's argument.

Rule 62(d) provides that an appellant "is entitled to an automatic stay of proceedings to enforce a judgment upon appeal when it *posts a supersedeas bond*." Eurasis International, Ltd. v. Holman Shipping, Inc., 441 F.3d 578, 585 (5th Cir. 2005) (emphasis in original). "Such a supersedeas bond is a privilege extended the judgment debtor as a price of interdicting the validity of an order to pay money." Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1190-91 (5th Cir. 1979). If the bond requirement is to be waived, it is the burden of the moving party to "objectively demonstrate" its ability to pay the judgment. Id., 1191. "It is not the burden of the judgment creditor to initiate contrary proof." Id.

In Poplar Grove, the district court granted defendant appellant's motion for a stay pending appeal of a $270,985.65 judgment with the posting of a $10,000.00 bond as total security. The Fifth Circuit reversed, noting that the record on appeal contained no evidence of defendant's present ability to pay the judgment. Id. The Court explained as follows:

> The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal. A judgment debtor who wishes to appeal may use the bond to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal. At the same time, the bond serves the prevailing party against any loss sustained as a result of being forced to forgo execution on a

>judgment during the course of an ineffectual appeal.

Id. However, the Poplar Grove Court carved out an exception to the rule when it identified two circumstances in which the bond requirement may be waived: (1) if the judgment debtor "objectively demonstrates" the financial ability to pay the judgment *and* that it has a "financially secure plan" for maintaining that financial ability during the appeal, the district court may substitute some other form of guaranty for the usual bond; and, (2) "if the judgment debtor's present financial condition is such that the posting of a full bond would impose an undue financial burden", the court may agree to some other arrangement such as "an appropriate restraint on the judgment debtor's financial dealings" to protect the rights of the judgment creditor.  Id.

In Castillo, cited by the District in support of its motion, the plaintiff won a substantial malpractice judgment against the Patient's Compensation Fund.  The district court granted the judgment debtor's motion for a stay without posting a bond pursuant to Rule *62(f)*, not 62(d), as requested by the District in this case.  However, the Court's analysis is instructive here. The Fifth Circuit affirmed, reasoning a follows:

>Although we are convinced that the judgment against the Fund is not a lien on the monies contained in the Patient Compensation Fund, we believe that the Medical Malpractice Act provides sufficient security to judgment

-3-

>creditors so as to satisfy the purpose behind
>the Rule 62(f) judgment as a lien
>requirement.

Castillo, 999 F.2d at 942.

The Court noted that state law (the act creating the Patient's Compensation Fund) specifically provides for the satisfaction of judgments out of the Fund on a semi-annual basis by legislative allocation. Id. Thus, the judgment creditor's rights were protected because a specific fund of money was available to pay the judgment should it be affirmed on appeal, and the statute provided for the timely allocation of money from that fund to pay judgments. In this case, the District has identified no such fund of monies available to pay judgments against it, and argues that whether it allocates funds from any sources to pay judgments against it is purely discretionary. Castillo does not support the District's position.

This court in the past addressed a motion by the St. Tammany Sheriff's Office for waiver of the bond requirement pursuant to Rule 62(d) and (f), pending appeal of a $4,000,000.00 civil rights judgment against it.[1] The Sheriff produced an affidavit, along with the audit report of the St. Tammany Parish Sheriff's Office, showing that at that time, the Sheriff's General Fund had a balance of in excess of $5,500,000.00, and that with the

---

[1] Burge v. St. Tammany Parish Sheriff's Office, C.A. No. 91-2321, r.d. #542.

exception of the matter at bar, no judgments had been rendered against the Sheriff which had not been paid, and that the Sheriff was insured against adverse judgments in any pending civil suit. This court waived the bond requirement, but required the Sheriff to file into the record a copy of the current audit report and each annual report thereafter during the period of appeal.

The District has offered no such objective evidence of its financial ability to pay the judgment appealed from now or in the future, or that its present financial condition is such that posting a full bond would impose an undue financial burden on it. Instead, it broadly describes its "substantial assets" - miles of levees, lands in the Bohemia Spillway, the New Orleans Lakefront Airport, the New Orleans Marina, the Seabrook Bridge and various other properties - but does not place a value on those assets, nor does it describe how these corporeal assets would satisfy a judgment against it.[2]  Neither does the District indicate whether there are any other unpaid judgments against it, and if so, how will it pay those.  The District also argues that its income from various sources has been pledged to support some $35,000,000.00 in loans from FEMA and the State of Louisiana, then argues that restraints on its income stream would jeopardize the operations

---

[2] *See* generally record documents #79, 91, 141 and 164.  At r.d. #141, Ex. 1, Affidavit of Louis Capo, Executive Director of the Orleans Levee District, Mr. Capo identifies the various accounts, their sources of funding and general purpose, and states that none of the money in any account "now or ever were generated or othwise attributable to lands owned by any of the plaintiffs in this action."

of the District and its ability to maintain adequate staffing and compromise the flood protection it provides.  On the other hand, the District argues that as a result of Hurricanes Katrina and Rita, and the state legislation and constitutional amendments consolidating the various southeast Louisiana levee boards and districts, effective as of January 1, 2007, it no longer has any flood protection responsibilities and must borrow money to maintain and operate its non-flood protection assets.

Suffice it to say, the financial situation of the District is murky at best.  The District has not objectively demonstrated that it is entitled to a waiver of the bond requirement for a stay of judgment.

II.

Motion to Prohibit Seizures

The District reasserts its position that any seizure of its money or assets and any execution of any judgment against it violates the provisions of Fed. R. Civ. P. 69(a), which, according to the District, incorporates Art. XII § 10(C) of the La. Const. of 1974 and La. R.S. § 13:5109(B)(2)[3].  Rule 69(a) provides that the procedure on execution of a judgment in federal court "shall be in accordance with the practice and procedure of the state" in which the district court is located.  It has been

---

[3] The District's Memorandum in Support of its Motion cites La. R.S. § 13:5105, which prohibits a jury trial in a suit against a political subdivision of the state.  The court assumes that this is a error.

the District's consistent position that the state constitutional provision and statute prohibit the Plaintiffs from seizing any of the District's assets, described as "public property" or "public funds," to satisfy their "money judgment" against the District. The District claims that the Amended Judgement is merely a "money judgment" against it, and that in executing on that judgment the Plaintiffs are not seeking the return of *their* property, but are attempting to seize *public funds*.  Reply Memorandum, r.d. #91, p.2.

The District explains that because the Plaintiffs' property was returned to them in 1992, "no currently generated revenues are attributable to their property."[4]  Id.  However, the District does not deny that between 1984, when Louisiana Act 233 of 1984 provided (*inter alia)* that the mineral royalties and other revenues generated by land owned by the Plaintiffs belonged to those land owners, and 1992, when the District finally returned title to that land to its owners, it collected and retained for its own use those mineral royalties and other revenues generated from those lands.  Its explanation does not address that money.

The Amended Judgment against the District is for the return of the Plaintiffs' property, retained by the District when it defaulted on the final Settlement Agreement to return at least a portion of Plaintiffs' money in 2005, in violation of the

---

[4]*See, supra,* note 3.

"Takings Clause" of the United States Constitution. The District's position would appear to be that, assuming the District no longer has the actual money it collected illegally some 20 years ago, Plaintiffs' property no longer exists, and need not be returned. Such a conclusion would render a judgment of a United States District Court irrelevant, the Plaintiffs without redress, and the District immune from consequences for its unconstitutional taking of Plaintiffs' property. The district court finds that result untenable.

## Conclusion

Unless the District can post a bond, or until it can objectively demonstrate that it has the financial resources to return Plaintiffs' property, and a plan to preserve those financial resources pending the decision on its appeal, or demonstrates to the district court that either option would present an undue financial hardship, the District is not entitled to a waiver of the supersedeas bond requirement of Rule 62(d), and Plaintiffs are entitled to execute on their judgment pending appeal.

Accordingly,

**IT IS ORDERED** that the Orleans Levee District's Motion to Stay Execution of Judgment and Prohibit Seizures is **DENIED.**

New Orleans, Louisiana, March 22, 2007.

*[signature]*

**MARCEL LIVAUDAIS, JR.**
Senior United States District Judge